# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2025

Lyle W. Cayce
Clerk

No. 24-30395

Keith Wayne Robertson,

*Plaintiff—Appellant*,

*versus*

Nolen Bass, *Warden*; Johnson, *Assistant Warden*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:24-CV-275

---

Before Higginbotham, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Keith Wayne Robertson, proceeding *pro se* and *in forma pauperis*, appeals the district court's dismissal of his suit asserting claims under 42 U.S.C. § 1983 as frivolous and for failing to state claims on which relief may be granted. We VACATE and REMAND for further proceedings consistent with this opinion.

**I.**

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30395

Keith Wayne Robertson ("Robertson"), inmate # 514621 at Tensas Parish Detention Center ("TPDC"), sued his warden, Nolen Bass, and assistant warden, Johnson,[1] pursuant to 42 U.S.C. § 1983, alleging that the conditions of his confinement violated the Eighth Amendment.

According to Robertson's initial complaint, from March 2023 to January 2024, TPDC experienced ongoing water shutoffs which disabled its sewerage system, and Robertson had to defecate in a clear bag five separate times. Robertson then had to place that bag into a larger bag, stored in the shower area, which was used to consolidate the waste bags from all 80 inmates in his dormitory. Though the bags were removed hourly, Robertson alleged that the procedure was dehumanizing and created an "unspeakable" odor that put his health at risk.[2] Robertson also had to urinate either "in [a] shower used by inmates" or "toilets full of 'feces.'" Robertson also alleged that in January 2024, he was deprived of running water for eight days, but that he was given one to five bottles of water per day to use for drinking and hygienic needs, such as "shower[ing]" and "washing hands."

Robertson then filed three amended complaints. In his First Amended Complaint, Robertson alleged that TPDC continued to have problems with its sewerage system, and that he again had to defecate in a bag, for a new total of eight times. Robertson also alleged that he used a toilet full of inmates' feces because he was not given a bag on one occasion. When water access returned, the human waste was pumped outside into a pile on the ground,

---

[1] Robertson did not provide Johnson's first name, nor is Johnson's first name listed in the case caption.

[2] Robertson states that the odor of human waste and the inhaling of "feces and urine" gave him headaches and a running nose.

which Robertson alleged was toxic and attracted maggots. Robertson also alleged the following:

- On February 26, 2024, there was a water shutoff at TPDC from 8:00 a.m. to 2:00 p.m. Inmates were provided with two bottles of water.
- On February 29, 2024, there was a water shutoff at TPDC from 9:00 a.m. to 3:00 p.m. Inmates were not provided with waste bags and had to use "toilets full of feces" and urinate in a shower's drainage pipe.
- On March 6, 2024, rust water and feces came up through a shower's drainage pipe.

In his Second Amended Complaint, Robertson alleged that he observed TPDC staff burning the larger trash bags of inmates' waste and "polluting the air with feces." And in his Third Amended Complaint, Robertson stated that Bass and Johnson have "very good knowledge of violations" and forced him to relieve himself in the waste bags; that TPDC "continues to operate [for] day(s) [and] week(s) [with a] lack of water"; that TPDC's sewerage system was inoperative; and that only four of the seven toilets in his dormitory worked. Robertson also alleged that the ventilation system in his dormitory did not work and that after it rained, there would be "leakage" from the ventilation system that led to "rust and brown water" on the floor.

Robertson alleged that he had to breathe in human waste, which irritated his eyes and throat, and caused breathing difficulties. He also asserted that as a result of the continuing suffering, he experienced "sadness, frustration[,] depression[,] and resentment." Robertson requested both monetary relief for his pain and suffering, as well as injunctive relief, which included the installation of a new urinal, the removal of the feces piles, and the repair of TPDC's sewerage system.

## II.

No. 24-30395

A magistrate judge screened Robertson's complaints pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and recommended dismissing his claims as legally frivolous and for failure to state a claim on which relief may be granted. The magistrate judge found that Robertson's allegations of using a bag as a toilet and urinating in a shower or feces-filled toilet on eight temporary and intermittent instances over the course of a year was not sufficiently serious to constitute an Eighth Amendment violation. The magistrate judge also found that Robertson had not alleged several key facts, such as "how often or how long he was . . . exposed" to the odors of human waste, or how the conditions he complained of impacted his health.

Robertson objected to the magistrate judge's recommendation, reasserting that TPDC experienced continual water shutoffs. He also stated that on one occasion, he was "exposed to f[er]mented human waste and c[a]me in contact with hazar[d]ous gases" after one of the waste bags exploded, causing him the loss of personal property and extreme dehydration. Robertson also alleged that he was experiencing sleeping problems, had a "very exhausting cough," and his mental health suffered because of the unsanitary conditions.

The district court adopted the magistrate judge's recommendation and dismissed Robertson's claims with prejudice as legally frivolous and for failure to state a claim. Robertson now appeals.[3]

**III.**

---

[3] Robertson filed three additional amended complaints not discussed here. The district court did not consider those pleadings, and Robertson does not argue that the court erred by not allowing additional amendments. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (per curiam) (recognizing that, while *pro se* briefs are liberally construed, "arguments must be briefed to be preserved").

4

No. 24-30395

A district court may *sua sponte* dismiss complaints that are either frivolous or fail to state a claim for relief when a litigant proceeds *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i), (ii), or when a prisoner seeks redress from governmental employees, 28 U.S.C. § 1915A. We review the dismissal of a complaint under 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous for abuse of discretion. *See Green v. Atkinson*, 623 F.3d 278, 279–80 (5th Cir. 2010) (per curiam). We review dismissals under 28 U.S.C. §§ 1915(e)(2)(B)(ii) for failure to state a claim and 1915A(b)(1) *de novo. See id.* at 280. Because the district court referred to both statutes in dismissing Robertson's claims, we apply *de novo* review, taking the facts alleged in the complaint as true and viewing them in the light most favorable to Robertson. *See id.; see also Geiger v. Jones*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam).

## IV.

On appeal, Robertson repeats the claims he pleaded in front of the district court. Construing his brief liberally, Robertson argues that he was exposed to biohazardous human waste "for consecutive days and weeks at a time," and that such unsanitary conditions of confinement constitute a claim under the Eighth Amendment. We agree.

## A.

The Eighth Amendment prohibits "cruel and unusual punishments[,]" and the conditions of a prisoner's confinement are subject to Eighth Amendment scrutiny. U.S. CONST. amend. VIII; *see Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Although the Constitution "does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement[.]" *Id.* (cleaned up). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment

5

must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (cleaned up).

To state a claim under the Eighth Amendment based on the conditions of his confinement, Robertson must show that: (1) "the conditions were objectively so serious as to deprive [him] of the minimal civilized measure of life's necessities" and (2) subjectively, "the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) (per curiam) (internal quotation marks and citations omitted).

Regarding the objective prong, the Supreme Court and this Court has recognized that adequate sanitation is a basic human need, the deprivation of which may satisfy an Eighth Amendment claim. *See Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020) (per curiam) (holding that "shockingly unsanitary cells" violated the Eighth Amendment); *accord Gates v. Collier*, 501 F.2d 1291, 1301 (5th Cir. 1974) ("Although the prison officials possess broad discretion in the area of conditions of confinement, this Court has repeatedly stated that there may be cases in which the deprivation of . . . hygienic facilities will warrant judicial action."). Furthermore, prisoners "need only show that there is a substantial *risk* of serious harm," not actual harm. *Garrett v. Lumpkin*, 96 F.4th 896, 900–01 (5th Cir. 2024) (emphasis in original) (internal quotation marks and citation omitted).

Regarding the subjective prong, "the prisoner must show that the prison official knew of and disregarded an excessive risk to inmate health or safety." *Alexander*, 951 F.3d at 241. "That is, the prisoner must show both that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the official drew the inference." *Id.*

No. 24-30395

**B.**

Treating Robertson's allegations as true and viewing them in the light most favorable to him, we find that the district court erred in dismissing his claim. *Green*, 623 F.3d at 280.

**1.**

Though this Court has suggested that "temporary plumbing problem[s]" are not sufficiently serious to constitute an Eighth Amendment violation, *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (finding that "two days of discomfort" which included "a plumbing problem" that "resulted in the cutoff of water to [plaintiff's] cell for several hours" did not constitute an Eighth Amendment violation), we have also held that the lack of toilet access—under the totality of the circumstances—may satisfy the objective prong of a conditions-of-confinement claim. *See, e.g.*, *Bienvenu v. Beauregard Par. Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983) (per curiam); *see also Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (recognizing that conditions which, by themselves, would not establish an Eighth Amendment violation may nonetheless do so in combination, "but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need").

This Court, for example, has held that a plaintiff stated an Eighth Amendment claim when he alleged that "the defendant party intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative, scum-encrusted washing and toilet facilities" for two weeks. *Bienvenu*, 705 F.2d at 1458–60. This Court has also found that the "complete deprivation of toilets for scores of inmates confined in the same small area" for 17 hours constituted a deprivation of hygiene, where a plaintiff alleged that his only option to relieve himself "was to urinate and defecate in [a] confined area" that he and 48 other inmates shared. *Palmer v. Johnson*, 193

F.3d 346, 352–53 (5th Cir. 1999). Additionally, this Court has held that a prisoner "forced to share a trash bag as a toilet with an inmate who was mentally unstable" and who could not avoid "the smell or leaking of the bagged sewerage in his indoor cell because [Bureau of Prison] officials refused to allow the cell-mates to remove the bagged sewerage and sealed the cell door with tape" stated an Eighth Amendment claim. *Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (per curiam).

Here, Robertson alleged that he had to defecate in a bag eight times because of water shutoffs at TPDC, and that, in general, four of the seven toilets in his dormitory functioned properly. Robertson complained that the water shutoffs at TPDC exposed him to bio-hazardous waste; that he was denied gloves and cleaning supplies after handling raw waste; that the dormitory was never sanitized or cleaned; that a faulty ventilation system intensified foul odors and caused leakage in the dormitory; and that there were maggots in the waste pile outside. These conditions—under a totality of the circumstances—constitute a deprivation of sanitation.[4] *See Bienvenu*, 705 F.2d at 460; *see also Wilson*, 501 U.S. at 304.

Robertson further alleged that an inoperative sewerage system was a recurring problem at TPDC that lasted days or weeks at a time, suggesting that the conditions he describes are similarly recurring and are more than "temporary plumbing problem[s]", *Holloway*, 685 F.2d at 156. This Court has recognized that "[e]vidence of frequent or regular injurious incidents" may give rise to an Eighth Amendment violation, even if a single harmful incident would not. *Green*, 623 F.3d at 281. Thus, though each discrete instance of a water shutoff fails to constitute an Eighth Amendment claim,

---

[4] The district court's findings did not analyze the totality of the circumstances of Robertson's allegations, but instead, evaluated each of Robertson's allegations independently.

the continual occurrences, taken together, establish a constitutional violation. *See, e.g.*, *Holloway*, 685 F.2d at 156; *Clark v. Harris*, 30 F.3d 1493, 1493 (5th Cir. 1994) (per curiam) ("There is no indication from Clark's pleadings that the temporary lack of water . . . due to a burst water main, produced anything more than 'mere discomfort or inconvenience.' The condition lasted for the relatively brief period of 27 hours[.]").

**2.**

We also find that Robertson has plausibly alleged that Bass and Johnson acted with deliberate indifference as to his health and safety. The district court, in concluding that Robertson's allegations did not constitute an Eighth Amendment claim, did not make findings regarding Bass and Johnson's subjective knowledge of any potential risks to Robertson. Here, Robertson alleged that Bass and Johnson forced him to comply with the bag procedure in response to TPDC's sewerage problems; that Bass and Johnson were involved in burning the bags filled with waste; and that Johnson had helped to pump the human waste into a pile on the ground outside when water access returned. Robertson's allegations of Bass and Johnson's active involvement suggest that Bass and Johnson were not only aware of the lack of water and inoperative toilets at TPDC, but also "drew the inference" that Robertson was being exposed to biohazardous waste on a recurring basis. *Alexander*, 951 F.3d at 241.

**V.**

The district court erred in dismissing the suit without permitting Robertson to develop further the factual basis for it. Thus, the district court's judgment dismissing Robertson's claim against Bass and Johnson is VACATED and REMANDED for proceedings consistent with this opinion, including further development of the record exploring the length and persistence of Robertson's alleged deprivation of a functioning sewerage

system and exposure to biohazardous waste. After factual development, Robertson's allegations may indeed fall far short of the Eighth Amendment. But alternatively, his prison conditions may have violated the Eighth Amendment if, on remand, the facts developed show persistent failures of TPDC's sewerage system.